

Gloria D. Smith (#200824)
Travis Ritchie (#258084)
Sierra Club Environmental Law Program
85 Second Street
San Francisco, CA 94105
(415) 977-5532
(415) 977-5793 FAX
gloria.smith@sierraclub.org
travis.ritchie@sierraclub.org

E-filing

Attorneys for Plaintiff Sierra Club

## UNITED STATES DISTRICT COURT FOR

## THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

CV10 3317 JCS

| | |
|---|---|
| SIERRA CLUB,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL HOUSING FINANCE AGENCY;<br>EDWARD DeMARCO, in his capacity as<br>Acting Director of FEDERAL HOUSING<br>FINANCE AGENCY;<br><br>Defendants. | Civ. No. _____<br><br>COMPLAINT FOR DECLARATORY AND<br>EQUITABLE RELIEF (VIOLATION OF<br>ADMINISTRATIVE PROCEDURE ACT;<br>VIOLATION OF THE NATIONAL<br>ENVIRONMENTAL POLICY ACT)<br><br>(5 U.S.C. §§ 551 *et seq.*; 42 U.S.C. §§ 4231 *et<br>seq.*;) |

## STATEMENT OF THE CASE

1.     The Sierra Club's Clean Energy Solutions campaign advances the development of

smarter, greener buildings, which eliminate or reduce global climate change emissions, reduce

utility bills, and generate renewable energy.  Sierra Club's work includes advocating for the

implementation of robust incentive programs that assist its members and homeowners generally

to generate their own renewable energy and increase energy efficiency.

2.      Sierra Club and its members benefit from the efforts of California and other states to develop municipal incentive financing for solar power system and energy efficiency retrofits on homes with the implementation of Property Assessed Clean Energy ("PACE") programs. PACE programs allow local governments to finance the initial costs of installing solar panels and retrofitting homes with improved energy efficiency measures such as weatherization by providing upfront funding to homeowners to pay for these improvements. Local governments then recoup these costs by adding special assessments to homeowners' properties.

3.      By providing upfront funding for renewable energy and energy efficiency improvement costs, PACE programs benefit Sierra Club members by enabling them to participate in PACE programs that conserve energy, dramatically reduce their utility bills and decrease the overall impact of global climate change by reducing their individual carbon footprints.

4.      PACE programs further benefit Sierra Club members by reducing the detrimental impacts from climate change and other air pollutants that result from the reliance on fossil fuel energy sources that produce carbon emissions and other harmful air pollutants. Reducing reliance on these polluting sources benefits Sierra Club members by improving human health, aesthetics, property value, recreational opportunities, and the environment.

5.      PACE programs further benefit Sierra Club members by creating thousands of local clean energy and energy efficiency construction jobs, which will develop a workforce in the building trades and other occupations necessary to deliver a new generation of higher-performing, smarter, greener buildings. These efforts will have a substantial beneficial impact on Sierra Club and its members by reducing carbon emissions from the use of fossil fuel generated power and thereby decreasing the threat of harm from global climate change.

6.      More than 200 local governments and communities in California have implemented, or are preparing to implement, PACE programs. California allocated approximately $50 million in American Recovery and Reinvestment Act ("ARRA") stimulus funding to these efforts, and the existing and planned PACE programs will leverage more than

1    $400 million combined.  In addition, the California Public Utilities Commission ("CPUC")

2    authorized $3.8 billion in spending for energy efficiency programs for 2010-2012.  The CPUC

3    developed the energy efficiency programs and other initiatives in anticipation of and in

4    conjunction with the numerous PACE programs existing or planned throughout the state.

5        7.      On May 5, 2010, the Federal National Mortgage Association ("Fannie Mae") and

6    the Federal Home Loan Mortgage Corporation ("Freddie Mac") each issued advice letters to all

7    lending institutions stating that mortgages for homes participating in PACE programs that

8    provide lien priority for energy related improvement assessments are not allowable under the

9    Fannie Mae/Freddie Mac standardized mortgage documents (referred to as the "uniform security

10   instruments").

11       8.      The May 5, 2010 advice letters wrongfully mischaracterized the PACE program

12   as issuing "loans".  In reality, rather than issuing loans, PACE programs operate under well

13   settled principles of California law by establishing assessments on homeowners' properties.

14   California relies upon its assessment power to fund municipal projects such as road paving and

15   other improvements.  Under California law, assessments create liens that have priority over

16   mortgages.

17       9.      The May 5, 2010 advice letters sent by Fannie Mae and Freddie Mac to lenders

18   misrepresented the nature of PACE program assessments in a manner designed to discourage

19   lenders from offering mortgages to homeowners participating in PACE.

20       10.     The practical and intended effect of the advice letters is to prevent homeowners

21   who currently participate, or may participate, in PACE programs from obtaining mortgages on

22   homes with energy related improvement assessments.

23       11.     Fannie Mae and Freddie Mac collectively own or guarantee approximately half of

24   all residential home mortgages in the United States.  As a result, these entities overwhelmingly

25   control the mortgage resale market, and their actions will prevent Sierra Club members and other

26   homeowners from participating in PACE programs and enjoying the benefits of energy

27   conservation and reduced utility bills.  The cumulative effect of these actions will also harm

28

COMPLAINT                                                                                      3

1    Sierra Club members by directly contributing to an increase in carbon emissions and other

2    harmful air pollutants because the chilling effect on PACE programs will substantially inhibit

3    homeowners' abilities to reduce their consumption of fossil fuel-based energy supplies.

4        12.    On July 6, 2010, the Federal Housing Finance Agency and Edward DeMarco

5    acting in his official capacity as director (together, "Defendant" or "FHFA") echoed the policies

6    stated in the May 5, 2010 advice letters by issuing a "Statement on Certain Energy Retrofit Loan

7    Programs," which directed Fannie Mae and Freddie Mac to adjust their practices in a manner that

8    will severely restrict, if not completely eliminate, the availability of PACE programs for

9    homeowners.

10       13.    Defendant FHFA issued the "Statement on Certain Energy Retrofit Loan

11   Programs" without providing notice and without providing any opportunity to receive comments

12   from Sierra Club, its members, or members of the public generally. As such, FHFA prevented

13   Sierra Club from addressing the substantial and detrimental impact that FHFA's regulatory

14   actions will have on Sierra Club's efforts to promote renewable energy development and

15   increase energy efficiency.

16       14.    The "Statement on Certain Energy Retrofit Loan Programs" issued by FHFA

17   condones and encourages actions by Fannie Mae and Freddie Mac that are not in the public

18   interest. Federal, state and local governments all support the development of PACE programs as

19   an essential component of renewable energy and energy efficiency endeavors. FHFA's guidance

20   to Fannie Mae and Freddie Mac will destroy PACE programs and is therefore not in the public.

21       15.    FHFA concluded in the "Statement on Certain Energy Retrofit Loan Programs"

22   that PACE programs "present significant safety and soundness concerns…" This finding is

23   unsupported and inaccurate. Typical PACE programs do not accelerate energy improvement

24   assessments upon the event of default or foreclosure. As a result, the amount due to local

25   governments upon foreclosure is limited to the periodic property assessments that are

26   outstanding. Mortgagors do not face substantial risk because the assessments due on foreclosure

27

28

COMPLAINT                                                                                    4

are relatively small amounts, and the energy improvements will likely increase the value of the property in an amount sufficient to offset any cost risk related to the PACE assessment.

16.   FHFA concluded in the "Statement on Certain Energy Retrofit Loan Programs" that PACE programs "are not essential for successful programs to spur energy conservation." This finding is unsupported and inaccurate. Local, state and federal governments have overwhelmingly voiced support for PACE programs and have stressed the critical importance of these programs in their efforts to reach renewable energy and energy efficiency goals. At a minimum, FHFA's actions risk the forfeiture of approximately $50 million in ARRA funding that has been allocated for improvements related to PACE programs in California.

17.   The practical and intended effect of FHFA's actions, if left unaddressed, will inhibit the ability of Sierra Club members and other homeowners to participate in PACE programs provided by local government to fund solar power system installation and energy efficiency retrofits. The elimination of PACE programs will substantially harm Sierra Club and its members by detrimentally impacting the environment through the increase in carbon emissions from fossil fuel energy sources that would otherwise be avoided through the use of solar energy and energy efficiency measures. FHFA's actions will further cause financial harm to Sierra Club members by preventing them from participating in PACE programs that would reduce the costs of their utility bills.

18.   By improperly issuing regulations that interfere with PACE programs, the Defendant's actions threaten to derail California's efforts to implement its long term energy efficiency and renewable energy plans. These actions cause direct harm to Sierra Club and its members.

## PARTIES

19.   Plaintiff Sierra Club is a national, non-profit environmental and conservation organization incorporated under the laws of the State of California. The Sierra Club is dedicated to the protection of public health and the environment. The Sierra Club brings this action on behalf of itself and its adversely affected members. The Sierra Club has more than 700,000

COMPLAINT                                                                                         5

members nationwide, several thousand of whom live in California. Through its Clean Energy Solutions campaign and Cool Cities program, Sierra Club members have worked tirelessly to reduce reliance on carbon emitting energy sources by promoting clean energy alternatives and energy efficiency measures. The Sierra Club's work includes intervening in efficiency and renewable energy dockets at public utility commissions nationwide, submitting comments in numerous state and federal agency energy-related proceedings and rulemakings, attending and speaking at public hearings, speaking to students and civic and other organizations, and holding seminars and symposia – all in support of policies to reduce the impact of climate change and other air pollution by promoting clean energy alternatives and energy efficiency.

20. Sierra Club members will be directly harmed if Defendant's actions are not reversed. Sierra Club members will suffer health and property impacts from increased air pollution and climate change. The Defendant's actions will also financially harm Sierra Club members by preventing them from receiving municipal funding through PACE programs to make clean energy or energy efficiency improvements for their homes, which in turn will result in higher utility bills and fewer financing options for clean energy related improvements. Furthermore, given their advocacy on behalf of protecting and improving energy conservation in California and preventing climate change, Sierra Club and its members have a compelling interest in ensuring that the Defendant complies with the requirements of the laws at issue. Unless the relief sought is granted, the human health, financial, aesthetic, recreational, environmental and other substantial interests of Sierra Club and its members will continue to be adversely affected and irreparably injured by Defendant's unlawful and arbitrary actions and omissions.

21. Defendant FHFA is a federal government agency created on July 30, 2008, to oversee Fannie Mae, Freddie Mac, and the Federal Home Loan Banks.

22. Defendant Edward DeMarco is the Acting Director of the Federal Housing Finance Agency and is sued in that capacity.

COMPLAINT 6

1

2      ## JURISDICTION AND VENUE

3           23.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal

       question), and 5 U.S.C. §§ 702 and 706 (Administrative Procedure Act).

4           24.    An actual and justiciable controversy now exists between the parties.  Plaintiff

5      Sierra Club is now entitled to the relief sought to redress the harm Plaintiff is now suffering and

6      will continue to suffer if the relief is not granted.

7           25.    The FHFA has made a final administrative determination that is subject to review

8      under the Administrative Procedure Act ("APA").  5 U.S.C. § 702.

9           26.    Venue in this Court is proper under 28 U.S.C. § 1391(e) because Plaintiff Sierra

10     Club resides in this district and no real property is involved in the action, the Defendant is an

11     agency of the United States or an officer of such agency acting in his official capacities, and a

12     substantial part of the events or omissions giving rise to the claim occurred in the Northern

13     District of California.

14     ## INTRADISTRICT ASSIGNMENT

15          27.    Pursuant to Civil Local Rule 3-2(c), assignment to the San Francisco Division is

16     proper because a substantial part of the events that give rise to this action occurred in this County

17     of San Francisco.

18     ## STATUTORY AND LEGAL BASIS

19     **Federal Housing Finance Reform Act of 2008**

20          28.    The Federal Housing Finance Reform Act of 2008 established the FHFA and

21     governs the scope of its regulatory authority.  12 U.S.C. §§ 4501 *et seq.*

22          29.    Pursuant to 12 U.S.C. § 4513(a)(1)(b)(i) and (ii), the FHFA shall ensure that:

23     "[Fannie Mae and Freddie Mac] operate[] in a safe and sound manner, including maintenance of

24     adequate capital and internal controls"; and "the operations and activities of [Fannie Mae and

25     Freddie Mac] foster liquid, efficient, competitive, and resilient national housing finance

26     markets";

27

28

       COMPLAINT                                                                              7

1    30.    Pursuant to 12 U.S.C. § 4513(a)(1)(b)(iv), the FHFA shall ensure that "the

2    activities of [Fannie Mae and Freddie Mac] and the manner in which [Fannie Mae and Freddie

3    Mac are] operated are consistent with the public interest."

4    31.    Pursuant to 12 U.S.C. § 4526, which provides the authority for FHFA to "issue

5    regulations, guidelines or other orders necessary to carry out [its] duties…", the FHFA must

6    provide notice and an opportunity for public comment in accordance with the provisions set forth

7    in the APA prior to issuing any regulations. *See* 5 U.S.C. § 553(b). Failure of an agency such as

8    FHFA to utilize the notice and comment rulemaking procedures of the APA renders a

9    substantive rule void, and any action taken under the rule has no legal effect.

10                              **Administrative Procedure Act ("APA")**

11    32.    The APA constrains the actions of agencies in the exercise of their powers. "One

12    of these constraints is the duty of agencies to find and formulate policies that can be justified by

13    neutral principals and a reasoned explanation." *Federal Communications Commission v. Fox*

14    *Television Stations, Inc.*, 129 S. Ct. 1800, 1823 (2009) (J. Kennedy concurring).

15    33.    Pursuant to 5 U.S.C. § 706, the reviewing court can invalidate agency rules that

16    are "(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

17    An agency rule is arbitrary and capricious "if the agency has relied on factors which Congress

18    has not intended it to consider, entirely failed to consider an important aspect of the problem,

19    offered an explanation for its decision that runs counter to the evidence before the agency, or is

20    so implausible that it could not be ascribed to a difference in view or the product of agency

21    expertise." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins.*

22    *Co.*, 463 U.S. 29, 43 (1983).

23    34.    Pursuant to 5 U.S.C. § 706, the reviewing court shall: "(2) hold unlawful and set

24    aside agency action, findings, and conclusions found to be: (A) arbitrary, capricious, an abuse of

25    discretion, or otherwise not in accordance with law. . . ." In applying this standard, a "court must

26    consider whether the decision was based on a consideration of relevant factors and whether there

27

28

COMPLAINT                                                                              8

has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

35. A reviewing court must also consider whether an agency followed the necessary procedural requirements. *Id.* at 417. When an agency "formulate[s], amend[s], or repeal[s] a rule", it must follow the APA's requirements for rulemaking. 5 U.S.C. § 551(5). These include publication of the proposed rule in the Federal Register, opportunity for public comment, and a general statement of basis and purpose. 5 U.S.C. § 553.

36. Under the APA, a "rule" is "the whole or a part of any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy…" 5 U.S.C. § 551(4).

37. After providing notice, "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(c).

38. Pursuant to the APA, 5 U.S.C. §§ 551, *et seq.*, any person who has suffered legal wrong because of agency action, or who is adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

## National Environmental Policy Act ("NEPA")

39. "NEPA . . . makes environmental protection a part of the mandate of every federal agency and department," *Gulf Oil Corp. v. Morton,* 493 F.2d 141, 145 (9th Cir. 1973), and is the "basic national charter for protection of the environment," 40 C.F.R. § 1500.1(a). Its purpose is "to help public officials make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." 40 C.F.R. § 1500.1(c).

40. To accomplish this purpose, NEPA requires that all federal agencies prepare a "detailed statement" regarding all "major federal actions *significantly* affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C) (emphasis added). This statement, known as an environmental impact statement ("EIS"), must describe, among other things, the "environmental

COMPLAINT 9

impact of the proposed action," any "adverse environmental effects which cannot be avoided should the proposal be implemented," and "alternatives to the proposed action." 42 U.S.C. § 4332(2)(C).

41.     To determine "significance" (and thus whether an EIS must be prepared), the agency must consider both the context and intensity of the proposed action and the degree to which the action is related to other actions with cumulatively significant impacts.

42.     To help determine whether this significance threshold is met, the agency may prepare an environmental assessment ("EA"). Based on the EA, a federal agency either decides to prepare an EIS or makes a finding of no significant impact ("FONSI"). *See* 40 C.F.R. §§ 1501.4, 1508.9(a)(1).

43.     NEPA also requires every agency to "study, develop, and describe alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources . . . ." 42 U.S.C. § 4332(2)(E). The alternatives evaluation "is the heart of the environmental impact statement." It should "sharply defin[e] the issues and provid[e] a clear basis for choice among options by the decisionmaker and the public." 40 C.F.R. § 1508.9. NEPA requires that an EIS must "rigorously and objectively evaluate all reasonable alternatives." 40 C.F.R. § 1502.14. Even if an EIS is not prepared, an EA must include a discussion of "alternatives as required by section 102(2)(E)" of NEPA. 40 C.F.R. § 1508.9(b).

44.     A federal agency's NEPA analysis must include consideration of a full range of reasonably foreseeable, direct, indirect and cumulative impacts to "the natural and physical environment" (40 C.F.R. § 1508.14). Cumulative impacts are impacts on the environment which result from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (federal or non-federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time. 40 C.F.R. § 1508.7.

COMPLAINT                                                                                    10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLAIMS FOR RELIEF

**Count One: Violation of APA, 5 U.S.C. § 706, and 12 U.S.C. §§ 4501 *et seq.***

45. Plaintiff incorporates by reference each and every other allegation in this Complaint.

46. PACE programs do not affect the "safety and soundness" of Fannie Mae and Freddie Mac. Defendant FHFA therefore acted outside the scope of its statutory authority when it issued the July 6, 2010 "Statement on Certain Energy Retrofit Loan Programs."

47. Defendant FHFA does not provide any justification or reasoned explanation for its conclusion that PACE programs affect the "safety and soundness" of Fannie Mae and Freddie Mac. Defendant FHFA's rule regarding PACE programs was therefore arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

48. PACE programs are essential for the implementation of energy efficiency programs in California and the United States. Defendant FHFA does not provide any justification or reasoned explanation for its conclusion that PACE programs "are not essential for successful programs to spur energy conservation." Defendant FHFA's rule regarding PACE programs was therefore arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

49. PACE programs are in the public interest because they conserve energy, dramatically reduce utility bills, decrease the overall impact of global climate change by reducing carbon emissions, and create thousands of local clean energy and energy efficiency jobs. Defendant FHFA's rule regarding PACE programs is not in the public interest because it obstructs or destroys the implementation of PACE programs.

50. Defendant FHFA's rule regarding PACE programs is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because it is not consistent with 12 U.S.C. § 4513(a)(1)(b)(iv), which requires Defendant FHFA to ensure that "the activities of [Fannie Mae and Freddie Mac] and the manner in which [Fannie Mae and Freddie Mac are] operated are consistent with the public interest."

COMPLAINT                                                                                          11

51.     Sierra Club and its members have been and will be harmed by Defendant FHFA's actions, which are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**Count Two: Violation of APA, 5 U.S.C. § 553, and 12 U.S.C. § 4526.**

52.     Plaintiff incorporates by reference each and every other allegation in this Complaint.

53.     Defendant FHFA's July 6, 2010 "Statement on Certain Energy Retrofit Loan Programs" is a regulatory action issued pursuant to 12 U.SC. § 4526 and a "rule" pursuant to 5 U.S.C. § 551(4), and it is therefore subject to the notice and comment requirements of 5 U.S.C. § 553.

54.     Defendant FHFA did not provide notice and an opportunity for public comment prior to issuing the "Statement on Certain Energy Retrofit Loan Programs."

55.     Defendant FHFA's failure to provide notice and an opportunity for comment violates the Federal Housing Finance Reform Act of 2008 (12 U.S.C. § 4526) and the APA (5 U.S.C. § 553).

56.     The "Statement on Certain Energy Retrofit Loan Programs" is a rule that was not promulgated in accordance with the rulemaking requirements of the APA.

57.     Sierra Club and its members have been and will be harmed by Defendant FHFA's failure to provide notice and an opportunity for comment because Defendant FHFA's actions denied Sierra Club the opportunity to explain to FHFA how the PACE assessment program actually works. Similarly, Sierra Club was denied the opportunity to provide comments on the detrimental effects that the "Statement on Certain Energy Retrofit Loan Programs" will have on the public interest and Sierra Club's Clean Energy Solution campaign to improve energy efficiency and increase renewable energy generation.

**Count Three: Violation of NEPA, 42 U.S.C. §§ 4321 *et seq.* and APA, 5 U.S.C. §§ 701 *et seq.***

58.     Plaintiff incorporates by reference each and every other allegation in this Complaint.

59.     Defendant FHFA's actions taken to eliminate the availability of PACE programs are "major federal action[s] significantly affecting the quality of the human environment," pursuant to 42 U.S.C. § 4332(2)(C).

60.     Defendant FHFA has violated NEPA, 42 U.S.C. § 4332(2), and the APA's prohibition against arbitrary and capricious actions, 5 U.S.C. § 706(2)(A), by issuing regulatory guidance directly affecting the availability of PACE programs and their attendant environmental benefits without evaluating the impacts of their actions in an EIS or an EA.

61.     Sierra Club and its members have been and will be harmed by Defendant FHFA's failure to take the requisite "hard look" at the direct, indirect, and cumulative adverse environmental effects of their actions regarding the PACE programs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

A.      Declare that Defendant FHFA's action to issue the "Statement on Certain Energy Retrofit Loan Programs" was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

B.      Declare that Defendant FHFA violated the APA by failing to provide notice and an opportunity for comment prior to issuing the "Statement on Certain Energy Retrofit Loan Programs";

C.      Declare that Defendant FHFA violated NEPA and the APA by not preparing and circulating an environmental impact statement for public review and comment prior to issuance of the "Statement on Certain Energy Retrofit Loan Programs" to Fannie Mae and Freddie Mac;

D.      Preliminarily and permanently enjoin Defendant from taking any action that directs Fannie Mae or Freddie Mac to take adverse action against any Sierra Club member who is participating, or may participate, in a PACE program;

E.      Preliminarily and permanently enjoin Defendant from taking any other action, or omitting to take any required action, that has a chilling effect on the

COMPLAINT                                                                                                    13

1  implementation of PACE programs or otherwise discourages lenders from

2  offering mortgages secured by homes with PACE program assessments;

3  F.  Award Plaintiff its reasonable costs and attorney fees.

4  G.  Provide such further and additional relief as the Court deems just and proper.

5

6  Respectfully submitted, this 29th day of July, 2010.

7

8

9  Gloria D. Smith
   Sierra Club Environmental Law Program
10  85 Second St., 2nd Floor
   San Francisco, CA 94105
11  (415) 977-5532

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                                                        14